# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>Keenan Delmar Hughes - xx/xx/1987<br><br>*Defendant(s)* | ) ) ) ) Case No. 21-MJ-01<br>) ) ) ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __7/1/2020 to 11/16/2020__ in the county of _____ in the __Eastern__ District of __Wisconsin__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 39 Counts of 18 U.S.C. §§ 922(a)(6), 922 (b)(1), 922 (g) & 2 and 18 U.S.C. § 371 | Aiding and abetting in making a false statement that are material to the lawfulness of a firearm sale, aiding and abetting in the possession of firearms by a prohibited person and conspiracy |

This criminal complaint is based on these facts:

See Attached Affidavit

☐ Continued on the attached sheet.

*Complainant's signature*

Rodolfo Ayala, ATF Task Force Officer
*Printed name and title*

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: January 4, 2021

*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. William E. Callahan, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR AN ARREST WARRANT AND A CRIMINAL COMPLAINT

I, Deputized ATF Task Force Officer and MPD Police Officer Rodolfo Ayala, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint and arrest warrant for Keenan HUGHES for the following offenses:

   A. Making of a false statement that are material to the lawfulness of a firearm sale (18 USC §§ 922(a)(6), 922(b) (1)),

   B. Aiding and abetting in the Possession of firearms by a prohibited person (felon) (18 USC § 922(g) & 2), and conspiracy (18 USC §371),

2. I am a Task Force Officer for Alcohol, Tobacco, Firearms and Explosives (ATF) Violent Impact Team and involved in the investigation of narcotics trafficking as well as individuals prohibited from the possession of firearms.

3. Your affiant has worked full-time as a law enforcement officer for the past eighteen (18) years; and your affiant has been a deputized, full time Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives for the past ten (10) years. Your affiant is currently assigned to the Chicago Field Division-Milwaukee field office.

4. Your affiant has received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons. Your affiant has been trained regarding firearm offenses and has arrested individuals for federal and state firearms related offenses. I have also investigated drug trafficking offenses at the state and federal level and have been involved in arresting individuals who violate the State of Wisconsin and/or the federal narcotics laws included

in 21 U.S.C. § § 841 and 846. I have worked with local, state, and federal law enforcement agencies, investigating the possession, use, and trafficking of controlled substances and illegal weapons in the State of Wisconsin.

5. Your affiant has participated in the execution of numerous search warrants in which weapons and/or narcotics were seized. Your affiant is familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking.

6. Your affiant is professionally trained in the use of firearms and your affiant has experience working with confidential informants, citizen informants and other sources of information.

7. Your affiant has received training in the investigation of narcotics to include but not limited to possession of a controlled substance, possession of a controlled substance with intent to deliver, and the manufacturing/delivering of a controlled substance. Your affiant has recovered and purchased numerous narcotics to include marijuana, cocaine salt, cocaine rock, heroin, oxycodone, and MDMA.

8. Your affiant has conducted numerous interviews of drug dealers and drug users over the course of your affiant's career and has been involved in numerous investigations were narcotics (marijuana, cocaine, heroin, etc.) were recovered.

9. The facts in this affidavit come from my personal observations, my training and experience and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

10. Throughout this affidavit, reference will be made to law enforcement. Law enforcement are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

11. Your affiant knows, from his training and experience that individuals who cannot legally purchase firearms because of previous felony conviction(s) or because they are underage will often recruit straw purchasers to illegally obtain firearm(s) on their behalf. These straw purchasers are often complicit with the intent to conceal the identity of the intended recipient of the firearm. These types of transactions are commonly conducted for financial gain of the straw purchaser or as the result of a relationship (familial/romantic/platonic/ and/ or economic) between the true purchaser and the straw purchaser. At times, investigations can lead to the identification of straw purchases when a firearm, once recovered by law enforcement, is submitted for tracing and this tracing information can reveal the existence of a relatively short time span between the purchase of a firearm and its ultimate recovery by law enforcement during a crime or during a criminal investigation. Under these circumstances, the short "time to crime" serves as an investigative lead.

12. There are also other common indicators of firearm straw purchases. Your affiant knows from his training and experiences that other common indicators of a firearm straw purchase include: the purchase of numerous firearms of the same make either in one sale, or in various sales, closely linked in time (so as to allow the illicit seller to have an inventory of firearms most sought out by those who want to purchase them illegally or for an illegal purpose); the purchase of large amounts of firearms during a short period of time (so as to have the ability to sell many firearms); the purchase of firearms by a straw purchaser from multiple Federal Firearms Licensees (FFLs)

3

Case 2:21-mj-00001-WEC   Filed 01/04/21   Page 4 of 15   Document 1

(so as to conceal the total amount of the large quantity of firearms purchased); the purchase of firearms in rural areas where the FFLs may have less experience identifying a potential straw purchase than those in larger cities (so as to shield those involved from police involvement); the use of rental cars to travel to FFLs (so as to make those involved more difficult to identify by law enforcement), and/or the payment in cash for the purchase of firearms (so as to conceal the true buyer of the firearms). In this investigation, Keenan HUGHES, as detailed below, appears to have been involved in the purchase of numerous firearms from FFLs so as to provide POWELL, a person prohibited by federal law from purchasing firearms because POWELL is a convicted felon. HUGHES worked with POWELL to purchase firearms from multiple FFLs so as to conceal the quantity of firearms purchased and the true intended purchaser (POWELL).

## PROBABLE CAUSE

13. Your affiant is currently investigating HUGHES and others regarding the straw purchase of firearms and the illegal possession of firearms by a prohibited person (felon). I am providing this affidavit is support of charges for the following crimes: making of false statements that were material to the lawfulness of a firearm sale (18 USC §§ 922(a)(6), and 922(b) (1), & 2), and aiding and abetting the possession of firearms by a prohibited person (felon) (18 USC § 922(g)); and conspiracy (18 USC § 371). Based on the facts set forth in this affidavit, I believe there is probable cause to arrest HUGHES and charge him with these criminal violations.

14. Your affiant is aware that HUGHES had been acting as a straw purchaser for Marvin POWELL, a convicted felon since at least July 2020. HUGHES has purchased approximately 39 pistols since July 15, 2020, with 33 of those pistols being purchased since September 26, 2020;

15. Based on my investigation, I have determined that HUGHES purchased numerous firearms in a short time frame from different Federal Firearms Licensees (FFL), many of them in rural areas. All the purchases were made in cash and totaled over $25,000.

16. In order to be able to make the below purchases from FFLs, HUGHES was required to fill out the ATF Form 4473 for each of the below listed firearms. When HUGHES filled out each of the forms, he falsely stated that he was purchasing the firearm for himself, when in fact, he was acting as a straw purchaser for POWELL, and therefore made false statements as to each firearm that were material to the lawfulness of a firearm sale in violation of 18 USC §§ 922(a)(6), 922(b) (1)).

17. Therefore, at each of the below locations and for each of the below dates and for each of the firearms purchased, HUGHES made a materially false statement on the ATF 4473 forms regarding the purchases of the below listed firearms:

- July 15, 2020 purchased 3 pistols in Richfield, WI (The Range)
- August 09, 2020 purchased 2 pistols in Germantown, WI (Mills Fleet Farm)
- September 07, 2020 purchased 1 pistol in Oshkosh, WI (Mills Fleet Farm)
- September 26, 2020 purchased 2 pistols in Deerfield, WI (Smitty's Guns)
- September 26, 2020 purchased 2 pistols in Portage, WI (Stock and Field)
- September 30, 2020 purchased 1 pistol in Deerfield, WI (Smitty's Guns)
- October 03, 2020 purchased 2 pistols in Waukesha, WI (Select Fire Weaponry)
- October 06, 2020 purchased 2 pistols in Waukesha, WI (Fletcher Arms)
- October 06, 2020 purchased 2 pistols in Appleton, WI (Fox Valley Firearms)

- October 08, 2020 purchased 3 pistols in Ripon, WI (Holliday Food & Sport)
- October 08, 2020 purchased 1 pistol in Waukesha, WI (Select Fire Weaponry)
- October 10, 2020 purchased 2 pistols in Deerfield, WI (Smitty's Guns)
- October 20, 2020 purchased 2 pistols in Appleton, WI (Appleton Scheels)
- October 30, 2020 purchased 3 pistols in Janesville, WI (Mid City's Guns)
- November 01, 2020 purchased 3 pistols in Appleton, WI (Appleton Scheels)
- November 01, 2020 purchased 1 pistol in Appleton, WI (Fireline Shooting)
- November 03, 2020 purchased 2 pistols in Waupun, WI (Martens Farm & Home)
- November 03, 2020 purchased 3 pistols in Oregon, WI (Max Creek Outdoors)
- November 04, 2020 purchased 2 pistols in Brookfield, WI (WI Firearms Training)

18. As part of this investigation, your affiant contacted several of the FFLs involved in either the sale or attempted purchase of firearms by HUGHES. For example, your affiant contacted the Manager of Holliday Food & Sport in Ripon WI, and the Manager advised your affiant that surveillance video was available which captured the sale of the firearms on October 08, 2020 identified above. Your affiant was provided a copy of the surveillance video and observed HUGHES in the video as the subject who purchased the firearms. The video was dated October 08, 2020. Your affiant had previously observed a Wisconsin Driver's License of HUGHES and

could identify the purchaser as being one and the same as the individual pictured on the driver's license.

19. In the video, HUGHES is observed arriving in a black Chevrolet sedan with a Texas plate of MKR3332. HUGHES exited the rear seat. The driver, later identified as Marvin POWELL, is seen on the video exiting the auto. On the video it is clear that both HUGHES and POWELL entered the Holliday Food & Sport and walked to the gun counter. Next, POWELL can be seen leaving the store a short time later and then driving away in the auto while HUGHES filled out paperwork for the firearms and paid for them. The auto returned after HUGHES received the firearms and picked up HUGHES.

20. Your affiant also spoke the Loss Prevention Officer at Appleton Scheels in Appleton, WI. The Loss Prevention Officer stated that he remembered the events which occurred when HUGHES purchased the pistols on October 20, 2020 and that the Loss Prevention Officer was monitoring the sale from his security cameras. The Loss Prevention Officer provided ATF agents with a copy of the surveillance video. The Loss Prevention Officer stated that on October 20, 2020, he followed HUGHES out of the store (using his cameras) after HUGHES filled out the paperwork to purchase the firearms while HUGHES was waiting for the background check to clear. The Loss Prevention Officer stated that HUGHES entered a gray Chevrolet sedan with an Illinois plate of FP84610. The Loss Prevention Officer stated that at some point the driver exited the auto. Your affiant observed the driver on the surveillance video whom your affiant has since identified as being POWELL. In addition, POWELL can be seen in the video wearing a white "Nautica" shirt with red and black lettering; a red "Nautica" hat; a black "Nautica" zip up hoody; a maroon "CivilizeD" sweatshirt with a pink teddy bear on its chest; and a navy "Nautica" hat.

7

These items of clothing were recovered at POWELL's residence on November 16, 2020 during the execution of a search warrant (see below).

21. Your affiant also spoke to a Sales Consultant at Wisconsin Firearms Training Center in Brookfield, WI. The Sales Consultant provided ATF with a copy of the surveillance video from November 04, 2020. Your affiant reviewed the video and observed a silver over tan Chevrolet Traverse drop off HUGHES in the parking lot of this FFL. Your affiant noted that the parking lot for Wisconsin Firearms Training Center was not full and there were plenty of spots for the Chevrolet Traverse to have parked. Your affiant knows that people will not park their autos in the business parking lot and/or drop off the purchasers where they can easily be observed from the gun store if they are seeking to conceal their identify because they are engaged in illegal activity. Your affiant knows from his training and experience that they do so to avoid having their autos seen in the surveillance video. This is often done to avoid law enforcement identifying them and/or their autos when conducting illegal activity.

22. Your affiant knows that another ATF Special Agent, as part of this investigation, went to Max Creek Outdoors in Oregon, WI to conduct follow up regarding HUGHES's pistol purchases between November 03 and 04, 2020. The ATF Special Agent spoke to the Owner who advised the ATF Special Agent that HUGHES had purchased three pistols on November 04, 2020. The Owner stated that HUGHES had been dropped off on November 3, 2020 by a silver or tan Chevrolet SUV. HUGHES then filled out the paperwork to purchase the firearms and left. The Owner stated that HUGHES returned the following date once the background check came back. The Owner stated that this time, HUGHES exited a black colored 4-door auto. The Owner questioned HUGHES as to why the auto did not come into the parking lot and HUGHES responded that the driver was his brother and that his brother was going to Subway. The Owner stated that

8

HUGHES was later picked up by the black colored 4 door auto. The Owner provided your affiant with a copy of the surveillance video.

23. Your affiant knows that another ATF Special Agent involved in this investigation went to PT Firearms in Cross Plains, WI to conduct follow up regarding an attempted straw purchase from that FFL. The ATF Special Agent spoke with the General Manager who advised the ATF Special Agent that HUGHES had entered their business and attempted to purchase a firearm on November 06, 2020. The General Manager stated that HUGHES had exited from a tan Chevrolet Traverse with a Wisconsin plate of AHB1927. The General Manager stated that HUGHES was the front passenger in the auto and that the Chevrolet Traverse parked to the adjacent parking lot. The General Manager stated that their parking lot was not full, so it made him take note of the car. The driver later exited the auto and the General Manager could tell that the driver was telling HUGHES something, and HUGHES and the driver left the store without purchasing the firearm. The General Manager described the driver as a black male, unknown age, wearing glasses, a black winter hat, a black zip up jacket with numerous patches on it. Your affiant reviewed the video and took note of the unusual jacket and subsequently identified it as being the same jacket POWELL was wearing when he was arrested on November 16, 2020 (see below).

24. Your affiant conducted a record check on the tan Chevrolet Traverse with a Wisconsin plate of AHB1927 and determined that the Traverse listed to Marvin POWELL's wife with an address of XXXX N. 49th Street, Milwaukee, WI (the same known address for Marvin POWELL).

25. Your affiant checked the Wisconsin Circuit Court Access (CCAP) for Marvin L. POWELL (B/M, XX -XX-1980). The check revealed that Marvin POWELL had numerous prior

9

felony convictions, including a conviction for Possession with Intent to Deliver-Cocaine (>5-15g), in Milwaukee County court case #2012CF001116.

26. On November 16, 2020, ATF Special Agents and Milwaukee Police Department (MPD) officers conducted surveillance at XXXX N. 49th Street, Milwaukee, and the law enforcement officers observed Marvin POWELL exit his residence accompanied by HUGHES. Both HUGHES and POWELL entered a tan 2013 Chevrolet Traverse with Wisconsin plate of AHB-1927 (the same car observed by some of the FFLs). A traffic stop was conducted while the Traverse drove around the block and stopped in front of POWELL's residence.

27. Law enforcement detained the driver, whom was identified as POWELL. POWELL was wearing a black zip up jacket with numerous patches on it that appeared identical to the one seen on the surveillance video captured on November 06, 2020 which was described above. The front passenger of the vehicle was identified as HUGHES. Law enforcement observed that HUGHES had two firearms in his possession; one was in his front left pants pocket (a Springfield Armory XD 45 compact handgun with serial number MG627211) and the second was found in HUGHES's front right pants pocket (a Ruger 9mm handgun with serial number 383-70880).

28. Law enforcement also noted that during the vehicle stop that POWELL was observed making movements which were noticeable and not common.

29. The law enforcement officers began to search the vehicle. In addition to the two handguns originally discovered by MPD Officers the following items, among others, were located in the car: a Ruger Model AR-556 Nato Pistol gun box (empty) with serial number 858-64568; a Zastave Arms Model ZPAP92 cal. 7.62 x 39 mm gun box (empty) with serial number ZP92762M; and a Ruger Model P89 gun box (empty) with one magazine.

10

30. Officers decided to seek a search warrant and set up containment on the residence. As the officers were waiting for the warrant outside the residence, they heard noises coming from the rear stairwell. Officers advised the subjects in the residence to stop what they were doing and then observed two females by the rear stairwell window. Officers asked the two females to come to the rear door, which they did. Law enforcement noticed a red suitcase that was partially opened, at the same place the two females had been standing and observed firearms protruding from the suitcase.

31. A short time later, a warrant was signed by the Honorable Maria DORSEY, Judicial Court Commissioner of the First Judicial District of Wisconsin for the search of HUGHES's residence

32. Once the warrant was obtained, a Milwaukee Police Department Detective recovered the red suitcase. Inside of the red suitcase the Detective located the following 8 firearms:

1. a Zastava Arms, model #ZPAP92, 7.62x39 caliber (serial #Z92-081360) pistol;
2. a Zastava Arms, model #PAPM85PV, 5.56 caliber (serial #M85PV006252) pistol;
3. a Ruger, model #AR-556 (serial #858-64568) pistol;
4. a Smith and Wesson, model #SW990L, 45 caliber (serial #SAH5783) pistol;
5. a Smith and Wesson, model M&P 40, 40 caliber (serial #DUN9853) pistol;
6. a Century Arms, model #TP9SA, (serial #6472-14AP07560) pistol;
7. a Springfield Armory, model #XDM 45 ACP, 45 caliber (serial #MG684937) pistol; and
8. a Ruger, model #57 (serial #641-64930).

11

33. Also recovered from inside the suitcase were the following items: a Smith and Wesson blue plastic gun box for 45 caliber pistol; a MCM brand black plastic gun case with an extra Smith and Wesson magazine in it; a Springfield Armory nylon fabric gun case with three 45 caliber magazines; a Century Arms Canik black plastic case; and a Ruger black plastic gun case with an extra magazine.

34. Law enforcement also located, in a closet the following firearms and firearm related items:

1. 20 STV 9mm cartridges;
2. 5 green Fiocchij 300 black ammunition boxes;
3. 2 green Fiocchi green ammunition boxes containing two Remington 223 cartridges;
4. an ASAP magazine loader for a 380 firearm;
5. 22, 223 unspent cartridges;
6. 16 Hornady 223 Remington unspent cartridges;
7. 14 Blazer Smith and Wesson 40-caliber unspent cartridges;
8. one 9mm Luger unspent cartridge;
9. 59 45-caliber unspent cartridges;
10. 24 45-caliber unspent cartridges;
11. two 5.7x28 unspent cartridges;
12. 4 40-caliber unspent cartridges; and
13. 22 FC 9mm-unspent cartridge.
14. 15, 40 caliber cartridges;

12

35. Also, in the dining room, law enforcement recovered:

   1. a black FNH gun case for a 9 mm handgun;
   2. a black Winchester magazine containing 15 Winchester 40 caliber unspent cartridges;
   3. four rifle magazines;
   4. a white Winchester box containing 23 40-caliber unspent cartridges;
   5. a gray military ammo crate containing 29 STV 9mm-unspent cartridges;
   6. a gray military style ammo crate containing 21 FC 9mm-unspent cartridges;
   7. and an additional 6 gray military ammunition crates which contained various unspent cartridges;
   8. a black FNH gun case for a FNH 40 caliber handgun;
   9. a black cardboard Springfield Armory gun box;
   10. a gray Ruger gun case containing a silver and black empty magazine; and
   11. a silver and black Smith and Wesson M&P 9mm magazine.

36. While at the residence, your affiant also interviewed the two females seen earlier in the house. One of the juvenile females stated that POWELL was her father and that he had directed her to move the red suitcase to the basement and that he had been stopped by law enforcement.

37. Your affiant spoke to a fellow ATF agent who reviewed the two firearms identified in paragraphs 24 above, and the eight firearms identified in paragraph 29 above, and that agent stated that none of the ten firearms are manufactured in Wisconsin, and therefore, they must have traveled in interstate commerce prior to being recovered from HUGHES's person and/or at POWELL's residence on November 16, 2020.

38. HUGHES was interviewed by law enforcement after he was advised of his rights. HUGHES stated, in substance, that he was buying the firearms for POWELL as POWELL could not legally purchase the firearms. HUGHES further stated that, that in addition to the above described firearms, he also bought numerous firearms for POWELL using purchases arranged by POWELL through Armslist.com. Your affiant knows that Armslist.com is an internet site which identifies individuals and FFLs who seek to sell and buy firearms. HUGHES also stated that all the purchases were made in cash and that POWELL paid him for buying the firearms for POWELL. HUGHES stated that POWELL always drove, and that POWELL was the one who picked out the gun stores they went to purchase the firearms.

## AUTHORIZATION REQUEST

39. Based on the foregoing, I request that the Court issue the proposed arrest warrant based on the criminal complaint and affidavit submitted.